# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 213

Kalynn Ann Kolstad,

Plaintiff and Appellant

v.

Dylan Wayne Claussen,

Defendant and Appellee

### No. 20250192

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Richard L. Hagar, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice.

Kyle R. Craig, Minot, N.D., for plaintiff and appellant.

Bonnie P. Humphrey, Minot, N.D., for defendant and appellee.

**Kolstad v. Claussen**
**No. 20250192**

**Tufte, Justice.**

[¶1]  Kalynn Kolstad appeals from a judgment awarding her and Dylan Claussen equal residential responsibility for their two minor children and determining child support. We affirm in part, concluding the district court did not clearly err in finding that Claussen did not change employment to reduce his child support obligation. We reverse in part, concluding the court failed to make sufficient findings or provide adequate explanation on best interest factors (c) and (j). And we remand for further findings and explanation on those factors.

I

[¶2]  Kolstad and Claussen are the parents of E.J.C. (born in 2020) and E.D.C. (born in 2022). Kolstad and Claussen were never married but lived together for approximately four years before separating in February 2024. Claussen has primary residential responsibility for A.D.C. (born in 2016), a child from a previous marriage.

[¶3]  In March 2024, Kolstad commenced this action for primary residential responsibility and child support. Claussen answered and counterclaimed, requesting primary residential responsibility and child support according to the guidelines. In October 2024, the district court held a bench trial. At the start of trial, Claussen informed the court that he was requesting either primary or equal residential responsibility.

[¶4]  After trial, the district court awarded the parties equal residential responsibility for their two children and ordered both parties to pay child support. The court found that Claussen changed employment to parent his children, not to reduce his child support obligation. After offsetting the obligations, the court ordered Claussen to pay Kolstad $157 per month for support of the two children. The court entered judgment.

[¶5]   Kolstad argues the district court erred by failing to make specific and detailed findings on best interest factors (c) and (j) before awarding residential responsibility. "A district court's decision on residential responsibility is a finding of fact subject to the clearly erroneous standard of review." *Queen v. Martel*, 2022 ND 178, ¶ 3, 980 N.W.2d 914. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, after reviewing the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.* "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial [primary residential responsibility] decision merely because we might have reached a different result." *Mowan v. Berg*, 2015 ND 95, ¶ 5, 862 N.W.2d 523. "The court must state its findings of fact with sufficient specificity to enable a reviewing court to understand the factual basis for its decisions." *Shively v. Shively*, 2025 ND 69, ¶ 4, 19 N.W.3d 824 (cleaned up).

[¶6]   In determining residential responsibility, the district court made findings of fact on the best interest factors under N.D.C.C. § 14-09-06.2(1). The court found that each factor either favored neither parent or was inapplicable, except for factor (c). The court's finding on factor (c) is unclear but appears to favor Kolstad.

A

[¶7]   Kolstad argues the district court found factor (c) favored neither party but failed to adequately explain that finding. Factor (c) concerns the children's "developmental needs and the ability of each parent to meet those needs, both in the present and in the future." N.D.C.C. § 14-09-06.2(1)(c). In his appellee brief, Claussen agrees that the court found factor (c) favored neither party.

[¶8] The district court found that Kolstad was meeting the children's developmental needs and would continue to do so. As to Claussen, the court found the parties presented little to no evidence on this factor and, therefore, "one could argue that this lack of evidence on the part of [Claussen's] ability would support a finding that this factor should favor [Kolstad]." The court

continued: "Taken by itself, the Court would agree and this factor would favor [Kolstad]. The Court is, however, less confident in the weight that this factor should play in the overall determination of primary residential responsibility in this case."

[¶9] One reading of the court's findings is that it weighed factor (c) in favor of Kolstad, but found the factor insufficient to determine the overall residential responsibility award. *See Armitage v. Armitage*, 2024 ND 97, ¶ 15, 6 N.W.3d 828 ("Determining parental responsibility is not a mathematical formula by which the factors are added up and the person with the most factors in [that person's] favor is awarded residential responsibility.") (cleaned up). Under this reading, the court did not sufficiently explain why its findings on the factors support its overall determination of residential responsibility.

[¶10] Alternatively, if the district court found this factor favored neither parent, as the parties suggest, we agree with Kolstad that the court failed to make sufficient findings on Claussen's ability to meet the children's developmental needs. *See Boldt v. Boldt*, 2021 ND 213, ¶ 10, 966 N.W.2d 897 ("A court's findings of fact are sufficient if they afford a clear understanding of the court's decision and assist the appellate court in conducting its review."). We remand for further findings and for the court to clarify whether it weighed factor (c) in favor of Kolstad, or in neither parent's favor. *See Shively*, 2025 ND 69, ¶ 15 (remanding for "a reasoned explanation of the district court's decision"). If the court weighed the factor in neither parent's favor, the court shall explain its reasoning. If the court finds the factor favors Kolstad, it must explain why its residential responsibility determination is supported by its findings on the factors.

B

[¶11] Kolstad argues the district court erred by failing to make specific and detailed findings on best interest factor (j). Factor (j) concerns evidence of domestic violence:

> In determining parental rights and responsibilities, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one

3

incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded residential responsibility for the child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent have residential responsibility. The court shall cite specific findings of fact to show that the residential responsibility best protects the child and the parent or other family or household member who is the victim of domestic violence. . . . As used in this subdivision, "domestic violence" means domestic violence as defined in section 14-07.1-01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14-07.1.

N.D.C.C. § 14-09-06.2(1)(j). "Even if the evidence of domestic violence does not trigger the statutory presumption under N.D.C.C. § 14-09-06.2(1)(j), the violence must still be considered as one of the factors in deciding primary residential responsibility." *Mowan*, 2015 ND 95, ¶ 13.

[¶12] At trial, Kolstad testified that Claussen assaulted her while she was moving out of the house in March 2024. She testified that she was trying to enter Claussen's bedroom as he was coming out and he "slammed the door onto [her] leg." The court admitted photographs of bruises Kolstad sustained. She testified that the bruises were from two different altercations, with the fourth photograph showing the bruise sustained from the bedroom door. Claussen testified that he has never assaulted Kolstad and that the bruises likely came from his pickup truck's running boards while she was getting into the truck.

[¶13] The district court found that Kolstad was bruised, but did not clearly find whether Claussen caused the bruising intentionally by "slamm[ing]" the bedroom door into her, or whether the bruising occurred accidently from either the bedroom door or the running boards. After describing the parties' testimony, the court found:

This accusation made, with supporting picture evidence, does not rise to the requirement for finding a presumption under this factor.

4

Though not sufficient for the presumption, consideration of this evidence under this factor is still required. The Court is always very reluctant to question the veracity of someone claiming to be a victim of domestic violence. The pictures clearly show bruising, the parties had placed themselves in difficult circumstances, and emotions seem to always run quite high in such domestic events. This all supports a finding of credibility in [Kolstad's] accusation of the event. The character of the parties, however, and specifically that of [Claussen], as presented by his testimony and all the other evidence presented as a whole in this case, makes the acceptance of this event as described by [Kolstad] more difficult to accept on the limited evidence presented. Accordingly, the Court is required to make a judgment call as to the weight of this evidence in this factor and in this case. This factor favors neither parent.

[¶14] The district court appears to have found Kolstad's testimony about the bruising not credible. But this is unclear. The court first stated that Kolstad's evidence "supports a finding of credibility in [Kolstad's] accusation of the event," but then stated that Claussen's character and testimony "makes the acceptance of this event as described by [Kolstad] more difficult to accept."

[¶15] Best interest factor (j) requires the district court to consider evidence of domestic violence. When credible evidence shows that domestic violence occurred, and the evidence also shows "one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or . . . a pattern of domestic violence within a reasonable time proximate to the proceeding," a rebuttable presumption arises against awarding residential responsibility to the perpetrator. N.D.C.C. § 14-09-06.2(1)(j); *see also Clemenson v. Clemenson*, 2025 ND 195, ¶¶ 11-12 ("For the presumption to trigger, the district court first needs to find credible evidence that domestic violence occurred" and then "one of the three alternative actions"). Here, it is unclear whether the court found credible evidence of domestic violence. The court found the presumption was not triggered, but did not sufficiently explain why. We cannot tell whether the court credited Claussen's version of events over Kolstad's. And even if the presumption was not triggered, it is unclear whether the court considered the alleged domestic violence in its analysis and, if so, why the factor favored neither party, rather than Kolstad.

5

[¶16] We reverse and remand for the district court to clarify its findings, make additional findings, or provide further explanation. *See Mowan*, 2015 ND 95, ¶ 13; *Shively*, 2025 ND 69, ¶¶ 12, 15. The court must first determine whether credible evidence of domestic violence exists. If so, the court must determine whether the violence resulted in serious bodily injury, involved the use of a dangerous weapon, or constituted part of a pattern of domestic violence within a reasonable time proximate to the proceeding. If credible evidence of domestic violence exists and one of these three circumstances is present, the court must apply the rebuttable presumption and determine whether the presumption was rebutted. If the presumption is not raised, the court must still determine whether the evidence of domestic violence weighs the factor in favor of one party.

III

[¶17] Kolstad argues the district court erred in determining Claussen's child support obligation. She asserts he made a voluntary change in employment resulting in a reduction of income.

> Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. The district court errs as a matter of law if it fails to comply with the child support guidelines in determining an obligor's child support obligation.

*Woelfel v. Gifford*, 2020 ND 197, ¶ 18, 948 N.W.2d 814.

[¶18] The child support guidelines provide that "if an obligor makes a voluntary change in employment resulting in reduction of income," the court may impute the obligor's income. N.D. Admin. Code § 75-02-04.1-07(7).

> [A] voluntary change in employment is *a change made for the purpose of reducing the obligor's child support obligation and may include* becoming unemployed, *taking into consideration the obligor's* standard of living, work history, education, literacy, health, age, criminal record, barriers to employment, record of seeking employment,

6

*stated reason for change in employment*, likely employment status if the family before the court were intact, and any other relevant factors.

*Id.* (emphasis added). "The burden of proof is on the obligor to show that the change in employment was not made for the purpose of reducing the obligor's child support obligation." *Id.*

[¶19] The record shows that during the parties' relationship, Claussen worked at Sundre Sand and Gravel. In 2023, Claussen worked as a plant operator, working 60 to 80 hours per week and earning $115,465. Around the time of their separation in February 2024, Claussen started working for Coteau Properties. In September 2024, Claussen returned to Sundre, earning $25 per hour. The district court found his gross annual income for child support calculations was $60,288, based on his most recent income at Sundre. The court found that Claussen's "change in employment was made for good reason" because "[t]he required work schedule and travel time made his previous higher paying job unworkable for parenting his children."

[¶20] Kolstad argues that Claussen failed to show that he did not change employment to reduce his child support obligation. Claussen testified, however, that he changed jobs the first time (to Coteau) to spend more time with his family, and then changed jobs the second time (back to Sundre) to spend more time with his children and to take his son, A.D.C., to and from school. Claussen testified that before leaving Sundre, he talked with his manager, Paul Severson, about switching positions in order to help Kolstad more around the house. Claussen testified that because Sundre had no open positions, he took the position at Coteau, allowing him more time with family. He testified he took the pay cut to return to Sundre to care for his son, A.D.C., for whom he has primary residential responsibility, including taking A.D.C. to and from school. Claussen testified that as a result of the break-up and his need to care for his son, his mother rearranged her work schedule to help him. He testified that was a temporary solution, however, requiring him to change jobs and return to Sundre.

[¶21] Severson testified that Claussen left Sundre originally to "improve his lifestyle, [and] have a little more time off" to spend with family. Severson testified that Claussen returned to Sundre because "the hours were more stable,"

7

and he would not have to work overnight shifts, allowing him to be home every night and be "able to be there with the kids." Severson testified that when Claussen has his daughters, he works from 8 a.m. to 5 or 5:30 p.m. and works "[l]onger hours when he does not have the girls."

[¶22] Under the clearly erroneous standard, we do not reweigh evidence or reassess witness credibility. *Toppenberg v. Toppenberg*, 2025 ND 121, ¶ 10, 23 N.W.3d 751. We conclude the district court did not clearly err in finding that Claussen did not change employment to reduce his child support obligation, but rather to parent his children.

IV

[¶23] We affirm in part, concluding the district court did not clearly err in finding that Claussen did not change employment to reduce his child support obligation. We reverse in part, concluding the court failed to make sufficient findings or provide adequate explanation on best interest factors (c) and (j). We remand for further findings and explanation on those factors.

[¶24] Jon J. Jensen, C.J.
     Daniel J. Crothers
     Jerod E. Tufte
     Douglas A. Bahr

[¶25] The Honorable Lisa Fair McEvers disqualified herself subsequent to oral argument and did not participate in this decision.